UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Terry D. Fetterly,                                          Civil No. 12-2617 (PAM/JJK)

    Plaintiff,

v.                                                          **MEMORANDUM AND ORDER**

Ruan Logistics Corporation,

    Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, Plaintiff's Motion is denied and Defendant's Motion is granted.

**BACKGROUND**

On March 31, 2010, Barry Duncan was driving Defendant Ruan Logistics Corporation's fuel truck when he passed out and crashed into Plaintiff Terry Fetterly's Spring Valley, Minnesota, home causing property damage. Duncan was taken to the emergency room at the Mayo Clinic where he reported that he had experienced chest pain just before losing consciousness. (Wood Aff. (Docket No. 17-1) Ex. 1 at 1, Ex. 3 at 1.) Duncan had no history of serious medical problems and had undergone Department of Transportation physical examinations every two years since 2001 that revealed no health concerns. (See id. Ex. 5 at 1.) Duncan's medical records indicate that he was generally in good health. (Id.) Doctors at the Mayo Clinic performed numerous tests and determined that Duncan experienced a sudden drop in blood pressure, which is referred to as a syncopal episode. (Id. Ex. 2 at 2.) Defendant's expert witness, Dr. Merlin Brown, confirmed the

Mayo Clinic's diagnosis and further stated that "[s]yncope can be a one-time life event, and one can have absolutely no symptoms leading up to the event." (Id. Ex. 5 at 3.) Fetterly has presented no evidence that refutes the above-stated facts.[1]

In September 2012, Fetterly sued Defendant claiming negligence and trespass in state court. Defendant removed the case to this Court based on diversity jurisdiction. The parties now both move for summary judgment.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing

---

[1] Fetterly did not retain an expert, depose Duncan or Dr. Brown, or present any evidence undermining Defendant's theory of the case.

that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     Plaintiff's Motion**

Fetterly argues that he has been unfairly prevented from exploring whether Duncan's incapacitation was in fact caused by an unexpected syncopal episode or some other condition that Duncan knew or should have know about.  Fetterly specifically contends that Defendant did not fully respond to discovery and that it failed to provide copies of the medical records Dr. Brown relied on in forming his opinion.  Fetterly asks the Court to award him summary judgment as a sanction for these alleged discovery violations or to strike Dr. Brown's report.  If the Court is disinclined to grant those requests, Fetterly asks the Court to re-open discovery so that he may retain an expert and depose Dr. Brown.

Fetterly's first complaint is that Defendant failed to produce copies of Duncan's medical records.  As explained by Defendant, however, Fetterly never properly requested those records.  At the outset of the case, the Court limited the parties' document requests to 20.  (Pretrial Scheduling Order (Docket No. 12) ¶ 4.)  Ignoring this limit, Fetterly propounded 64 document requests, the first 20 of which did not include a request for medical records. (Def.'s Resp. to Req. for Produc. of Docs. (Docket No. 27-1).)  Defendant objected to each document request after number 20 as follows:  "Defendant objects to this request as beyond the limit of 20 document requests per party as established in the November 26, 2012 court-issued Scheduling Order."   (Id. at 4-14.)   It is undisputed that Fetterly never complained to Defendant about the objections or failure to produce the documents requested,

never sought to expand the discovery limits, and never filed a motion to compel. Thus, Fetterly's own inaction caused the harm he now claims to suffer.

Fetterly also contends that Defendant violated Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure by not attaching medical records to Dr. Brown's report. Fetterly claims that this omission somehow rendered him unable to retain an expert of his own. He makes this argument despite the fact that he was required to make expert disclosures a month before Defendant, but never did. (Scheduling Order ¶¶ 7a, 7b.) Thus, even if Defendant failed to provide exhibits relating to Dr. Brown's detailed and timely disclosed report (Manion Aff. (Docket No. 21-1) Ex. 1), there is no causal link between any such omission and Fetterly's utter failure to comply with the Pretrial Scheduling Order. Furthermore, it appears to be undisputed that Fetterly never asked for the exhibits or to take Dr. Brown's deposition until now. As above, Fetterly's inaction is the cause of his claimed prejudice.

At the hearing on this matter, Fetterly also asserted that Defendant's "Act of God" defense was an utter surprise that he did not learn about until it was too late to conduct discovery or retain an expert. The record belies this assertion. On February 28, 2013—four months before the close of discovery and one month before Plaintiff's expert disclosures—Defendant answered Fetterly's interrogatory asking for all information about Defendant's Act of God defense as follows:

> Barry Duncan suffered a sudden loss of consciousness, which is the direct and proximate cause of the accident. Barry Duncan did not have a prior history of episodes of loss of consciousness and had no way of anticipating that the loss of consciousness was going to occur and had no control over the episode occurring.

4

(Manion Aff. Ex. 3 at 6.) Based on this response alone, Fetterly had ample and timely notice of the nature of basis of Defendant's Act of God defense.

In sum, there is no basis on which to grant Fetterly any aspect of the relief he seeks. Fetterly's Motion for Summary Judgment is denied.

**B.     Defendant's Motion**

Defendant argues that Fetterly cannot maintain his negligence and trespass claims as a matter of law because there are no facts in the record indicating that Duncan's syncopal episode, and thus the accident, could have been anticipated or prevented.

**1.     Negligence**

Defendant argues that it is entitled to summary judgment on Fetterly's negligence claim because Fetterly has failed to establish that his injury was forseeable. Fetterly has not responded to this argument, thereby seemingly conceding that, based on the record before the Court, his claims should be dismissed.

Negligence is defined as the failure "to exercise such care as persons of ordinary prudence usually exercise under such circumstances." Flom v. Flom, 291 N.W.2d 914, 916 (Minn. 1980) (citations omitted). To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury. Funchess v. Cecil Newman Corp., 632 N.W.2d 666, 672 (Minn. 2001) (citing Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995)). Generally, a defendant's duty to a plaintiff is a threshold question

because "[i]n the absence of a legal duty, the negligence claim fails." Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) (quoting Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999)); see also State Farm Fire & Cas. v. Aquila Inc., 718 N.W.2d 879, 887 (Minn. 2006) (stating that plaintiffs failed to present a prima facie case for negligence when they could not establish that defendants owed a duty of reasonable care).

Minnesota courts have considered the following factors when determining whether a defendant owed a duty of care: (1) the foreseeability of harm to the plaintiff, (2) the connection between the defendant's conduct and the injury suffered, (3) the moral blame attached to the defendant's conduct, (4) the policy of preventing future harm, and (5) the burden to the defendant and community of imposing a duty to exercise care with resulting liability for breach. Domagala, 805 N.W.2d at 26. The duty to exercise reasonable care arises from the probability or foreseeability of injury to the plaintiff. Id. "Although in most cases the question of foreseeability is an issue for the jury, the foreseeability of harm can be decided by the court as a matter of law when the issue is clear." Foss v. Kincaid, 766 N.W.2d 317, 322-23 (Minn. 2009).

Minnesota courts have also held that where a medical event leading to an accident was unforseeable, the defendant owed no duty to the plaintiff. In Kellogg v. Finnegan, 823 N.W.2d 545 (Minn. Ct. App. 2012), for example, the court affirmed the district court's determination that the defendant could not have foreseen suffering a seizure while driving where the medical evidence established that the defendant had never had a prior seizure or experienced symptoms that could have predicted a future seizure. Id. at 458. As here, the

6

plaintiff furnished no medical evidence to the contrary. Id.

The unrebutted medical evidence presented through Dr. Brown and Duncan's medical records establishes that Fetterly's injury was in fact unforeseeable. Duncan's medical history provides no hint that he was at risk of experiencing a syncopal episode. Indeed, the records establish that syncopal episodes are, by nature, unpredictable. Fetterly has done nothing to rebut these facts. The Court therefore concludes that the harm to Fetterly was not foreseeable, and that summary judgment on Fetterly's negligence claim is appropriate.

### 2. Trespass

Defendant also argues that Fetterly's trespass claim should be dismissed as a matter of law because there is no evidence that Duncan intentionally entered Fetterly's property. The Court agrees.

Under Minnesota law, a defendant is liable for trespass when a plaintiff has the "right of possession" to the property and there is a "wrongful and unlawful entry upon such possession by defendant." Johnson v. Paynesville Farmers Union Co-op Oil Co., 817 N.W.2d 693, 701 (Minn. 2012.) "The gist of the tort of trespass . . . is the intentional interference with the rights of exclusive possession." Id. Because, as noted, the undisputed record establishes that Duncan's entry onto Fetterly's property was involuntary, there was no trespass as a matter of law.

**CONCLUSION**

There are no genuine issues of material fact precluding summary judgment. Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Docket No. 20) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Docket No. 14) is **GRANTED**; and

3. The Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>November 25, 2013</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
